# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| **BRIAN EMCH, on behalf of himself and all others similarly situated,** <br> **6417 Girard Avenue** <br> **Cincinnati, Ohio 45213** <br><br> Plaintiff, <br><br> v. <br><br> **COMMUNITY INSURANCE COMPANY d/b/a ANTHEM BLUE CROSS AND BLUE SHIELD,** <br> **120 Monument Circle** <br> **Indianapolis, Indiana 46204** <br><br> **Statutory Agent:** <br> **c/o CT Corporation System** <br> **4400 Easton Commons Way** <br> **Suite 125** <br> **Columbus, Ohio 43219** <br><br> Defendant. | Case No.: _____ <br><br><br><br><br><br><br> CLASS ACTION COMPLAINT <br> AND JURY DEMAND |

NOW COMES Plaintiff Brian Emch, on his own behalf and on behalf of all others similarly situated, asserts to the best of his knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the following:

### INTRODUCTION

1. This lawsuit presents a narrow issue that is of critical importance: May a health insurer deny coverage for mental health treatment in circumstances where there is no corresponding limitation for treatment for physical injury and not violate the Ohio mental health parity law, O.R.C. §3923.281 (the "Ohio parity law")? Defendant's denial of coverage for services rendered at a residential treatment center breaches the protections of the Ohio parity law, which are – as a matter of law – embedded as a

material term of the contract of insurance that governs the rights and responsibilities of these parties.

2. Plaintiff received his health insurance through his employer, a private entity located in Cincinnati, Ohio. This fully-insured plan was issued by Defendant Community Insurance Company d/b/a Anthem Blue Cross and Blue Shield ("Anthem"). Plaintiff's son, H.E., is a covered beneficiary under this plan, as well.

3. On information and belief, Anthem's Certificate of Coverage -- attached as Exhibit A -- is materially identical to the other benefit booklets provided to the fully-insured plans it administers.

## JURISDICTION AND VENUE

4. This Court has jurisdiction in this ERISA matter under 28 U.S.C. § 1331.

5. Venue is appropriate in this district because Plaintiff and Anthem are located here, and the breaches at issue took place here. 29 U.S.C. § 1132(e)(2).

6. In conformity with 29 U.S.C. § 1132(h), plaintiff has served this Complaint by certified mail on the Secretary of Labor and the Secretary of the Treasury.

## PARTIES

7. At all relevant times, plaintiff was a full-time employee for a business located in Cincinnati, Ohio. In addition, Plaintiff has continuously resided in Cincinnati, Ohio. Plaintiff's health insurance plan at issue in this litigation was insured and issued by Anthem. Plaintiff's son – H.E. -- was also covered under this plan. Plaintiff is the responsible party for the charges for medical treatment at issue in this litigation.

8. Defendant Community Insurance Company d/b/a Anthem Blue Cross and Blue Shield is a non-profit company incorporated in Ohio with its principal place of

business located in Mason, Ohio. In this Complaint, "Anthem" refers to defendant Community Insurance Company d/b/a Anthem Blue Cross and all related, successor, predecessor, parent and subsidiary entities to which these allegations pertain.

**FACTS**

**A.     Coverage**

9.     Under the terms of the plan, Anthem is required to authorize coverage for "covered services." The plan defines "covered services" to include "[s]ervices, supplies or treatment as described in this Certificate which are performed, prescribed, directed or authorized by a Provider" and that are, among others, "Medically Necessary or otherwise specifically included as a benefit under this Certificate" and "[w]ithin the scope of the license of the Provider performing the service. (Exh. A, pg. M-107)

10.    Anthem determined that the disputed services received by H.E. were medically necessary.

11.    Anthem has not asserted that H.E.'s treatment was experimental or investigative.

12.    A "Provider" is defined by the Plan to include "[a] duly licensed person or facility that provides services within the scope of an applicable license and is a person or facility that the Plan approves. This includes any Provider rendering services which are required by applicable state law to be covered when rendered by such Provider." (Exh. A, pg. M-112)

13.    A "Skilled Nursing Facility" is defined by the Plan as "A Provider constituted, licensed, and operated as set forth in applicable state law, which:

> 1. mainly provides Inpatient care and treatment for persons who are recovering from an illness or injury;

3

    2. provides care supervised by a Physician;

    3. provides 24 hour per day nursing care supervised by a full-time Registered Nurse;

    4. is not a place primarily for care of the aged, Custodial or Domiciliary Care, or treatment of alcohol or drug dependency; and

    5. is not a rest, educational, or custodial Provider or similar place." (Exh. A, pg. M-114)

    14. The plan specifically covers "Biologically Based Mental Illness Services." (Exh. A, pg. M-22) This includes services for "schizophrenia, schizoaffective disorder, major depressive disorder, bipolar disorder, paranoia and other psychotic disorders, obsessive-compulsive disorder, and panic disorder, as these terms are defined in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders published by the American Psychiatric Association." This coverage is mandated by Ohio statute.

    15. The plan also covers "Behavioral Health Services *other than* Biologically Based Mental Illness Services." (emphasis added)(Exh. A, pg. M-22)

    16. Under the coverage for "Behavioral Health Services *other than* Biologically Based Mental Illness Services" (emphasis added) there is an exclusion under "Non-Covered Behavioral Health Services" for "Residential Treatment services" which is defined to mean "individualized and intensive treatment in a residential setting, including observation and assessment by a psychiatrist weekly or more frequently, an individualized program of rehabilitation, therapy, education, and recreational or social activities." (Exh. A, pg. M-23)

17. The exclusion under the coverage for "Behavioral Health Services other than Biologically Based Mental Illness Services" of "Residential Treatment services" does not apply to coverage for "Biologically Based Mental Illness Services."

18. In Section 6 of the plan under the heading "Non Covered Services/Exclusions," Anthem attempts to exclude coverage for treatment at a residential treatment facility by including "[c]are provided or billed by residential treatment centers or facilities, unless those centers or facilities are required to be covered under state law. This includes but is not limited to individualized and intensive treatment in a residential facility, including observation and assessment by a Provider weekly or more frequently, an individualized program of rehabilitation, therapy, education, and recreational or social activities." (Exh. A, pg. M-55)

19. H.E. has struggled for years with mental health issues. H.E. has been diagnosed with schizophrenia. On June 1, 2015, H.E. was admitted to Hopewell, an Ohio-based licensed residential treatment center that specializes in the therapeutic treatment of individuals with serious mental illnesses, including biologically-based mental illnesses such H.E.'s.

20. While at Hopewell, H.E. received medically necessary mental health services. H.E. was admitted to Hopewell after three psychiatric hospitalizations lasting between three days and one week all occurring over a period of two months.

21. Plaintiff paid $29,915.49 for services rendered to H.E. at Hopewell from June through September 2015 and sought coverage from Anthem. Plaintiff's claims were denied by Anthem originally and on appeal. In all cases, Anthem relied on the residential treatment exclusion in Section 6 of the plan. In no case did Anthem

5

challenge the medical necessity of the services. The final denial was dated September 21, 2016.

22. Hopewell is licensed by the State of Ohio to operate a residential treatment facility pursuant to O.R.C. 5119.34. Specifically, Hopewell is licensed as a Type 1 facility authorizing it to provide "room and board and personal care services, and mental health services to one or more adults with mental illness or severe mental disabilities or children and adolescents with a serious emotional disturbance or in need of mental health services who have been referred by or are receiving mental health services from a hospital, mental health agency, or practitioner." O.A.C. 5122-30-03(40)(a). Though individuals admitted to a Type 1 residential treatment facility are also provided room and board during their admission -- as are persons admitted to hospitals and skilled nursing facilities -- by law, the "provision of room and board and personal care [is] secondary or ancillary to the primary purpose of the facility to provide mental health services." O.A.C. 5122-30-29(A)(1).

23. Hopewell, like all licensed Type 1 facilities, is required to develop an individualized treatment plan for all individuals admitted.

24. H.E. received a psychiatric assessment by a psychiatrist who determined that residential treatment was necessary to treat his condition. H.E. continued to treat with a psychiatrist during his admission at Hopewell. These services included management of prescription medications necessary to treat H.E.'s condition. H.E. also regularly participated in therapy sessions with treatment providers licensed by the State of Ohio.

25. Anthem's residential treatment center exclusion violates the Ohio parity law. The Ohio parity law requires that "every policy of sickness and accident insurance

shall provide benefits for the diagnosis and treatment of biologically based mental illnesses on the same terms and conditions as, and shall provide benefits no less extensive than, those provided under the policy of sickness and accident insurance for the treatment and diagnosis of all other physical diseases and disorders." O.R.C. 3923.281(B).

26. The term "biologically based mental illness" is defined by the Ohio parity act to mean "schizophrenia, schizoaffective disorder, major depressive disorder, bipolar disorder, paranoia and other psychotic disorders, obsessive-compulsive disorder, and panic disorder, as these terms are defined in the most recent edition of the diagnostic and statistical manual of mental disorders published by the American psychiatric association." O.R.C. 3923.281(A)(1).

27. Plaintiff's insurance coverage with Anthem includes coverage for "biologically based mental illness" like that suffered by H.E. but purports to exclude coverage for a "biologically based mental illness" if treatment is provided at a residential treatment center.

28. The Anthem plan includes coverage for non-mental health treatment from non-hospital, 24-hour providers such as skilled nursing or rehabilitation facilities when a person has a covered medical illness. In addition, the Anthem policy also covers medical/surgical expenses at other intermediate levels of care.

29. Anthem's plan does not have any limitation on medical/surgical care coverage at skilled nursing or rehabilitation facilities comparable to the blanket exclusion of residential treatment centers for biologically based mental illness.

30. Anthem maintains that its exclusion of services provided by residential treatment centers applies equally to medical/surgical benefits and mental health

benefits. However, the plan's definition of a "residential treatment center" clearly includes only services which are not medical/surgical. The plan defines a residential treatment center as one which provides "individualized and intensive treatment in a residential facility, including observation and assessment by a Provider weekly or more frequently, an individualized program of rehabilitation, therapy, education, and recreational or social activities."

31. Anthem's plan violates the Ohio parity law because its blanket exclusion for services rendered at residential treatment programs is a separate treatment limitation applicable only to mental health benefits.

**CLASS ALLEGATIONS**

32. Plaintiff brings this lawsuit under Federal Rule of Civil Procedure 23(b)(2) on his own behalf and on behalf of the following class:

> All persons who are covered under any policy, contract, or certificate of insurance that is delivered, issued for delivery, renewed, or used in the State of Ohio by Anthem that provides coverage for biologically based mental illness but categorically excludes coverage for biologically based mental illness at residential treatment centers.

33. Plaintiff brings this lawsuit under Federal Rule of Civil Procedure 23(b)(3) on his own behalf and on behalf of the following subclass:

> All persons who are covered under any policy, contract, or certificate of insurance that is delivered, issued for delivery, renewed, or used in the State of Ohio by Anthem that provides coverage for biologically based mental illness but categorically excludes coverage for biologically based mental illness at residential treatment centers and were denied benefits because the policy, contract, or certificate of insurance excluded such coverage.

34. Membership in the proposed class and subclass is so numerous that individual joinder of all class members is impracticable except by means of a class

action. The disposition of the claims in a class action will benefit both the parties and the Court. The exact number of class members can be readily determined through discovery of Anthem's business records.

35. Plaintiff's claims are typical of all other class members. All class members' claims are unified, as all are subject to Anthem's residential treatment center exclusion, which violates the protections of the Ohio parity law.

36. Plaintiff's interests are coincident with, and not antagonistic to, those of the other members of the class and the sub-class. Plaintiff is a member of both the class and the subclass.

37. Plaintiff will adequately represent both the class and the subclass because he has interests in common with the proposed class members and plaintiff has retained attorneys who are experienced in class action litigation.

38. There is a well-defined community of interest in the questions of law and fact involving and affecting the class and the sub-class to be represented by Plaintiff. Common questions of law and/or fact predominate over any questions affecting only individual members of the class. Common questions include, but are not limited to, the following:

(a) Whether Anthem's blanket exclusion of coverage for services at residential treatment centers violates the Ohio parity law?

(b) If Anthem's acts violate the Ohio parity law, what is the appropriate remedy?

(c) What is the appropriate measure of relief?

39. The prosecution of separate actions by individual members of the class and the sub-class would create a risk of:

(a) Inconsistent or varying adjudications concerning individual members of the class and/or subclass that would establish incompatible standards of conduct for Anthem opposing the class; and

(b) Adjudication with respect to individual members of the class and sub-class that would, as a practical matter, be dispositive of the interests of other members not parties to such adjudications, and/or substantially impairs or impedes the ability of other non-party class members to protect such individual interests.

40. The class action method is appropriate for the fair and efficient prosecution of this action.

41. Individual litigation of all claims that might be asserted by all members of the class and the sub-class would produce such a multiplicity of cases that the judicial system, having jurisdiction of the claims, would remain congested for years. Class treatment, by contrast, provides manageable judicial treatment calculated to bring a rapid conclusion to all litigation of all claims arising out of the conduct of Anthem.

42. The certification of the above class and subclass would allow litigation of claims that, in view of the expense of the litigation, may be an insufficient amount to support separate actions.

### Count 1 – Plan Enforcement under 29 U.S.C. § 1132(a)(1)(B)

43. Plaintiff restates the preceding paragraphs as if fully set forth.

44. Plaintiff's first legal claim is brought under 29 U.S.C. § 1132(a)(1)(B). The class period for this claim extends back six years from the commencement of this action to the date of class certification. This claim is brought on behalf of both the class and subclass described above.

45. Anthem's contract specifically incorporates the terms of the Ohio parity law. In particular, the contract provides that "[a]ny provision of [the contract] which is in conflict with the laws of the state in which the Group Contract is issued, or with federal law, is hereby automatically amended to conform with the minimum requirements of such laws." (Exh. A, pg. M-55).

46. The Ohio parity law - as incorporated into the Anthem contract -- requires that "every policy of sickness and accident insurance shall provide benefits for the diagnosis and treatment of biologically based mental illnesses on the same terms and conditions as, and shall provide benefits no less extensive than, those provided under the policy of sickness and accident insurance for the treatment and diagnosis of all other physical diseases and disorders." O.R.C. 3923.281(B).

47. The protections of the Ohio parity law are essential and material terms of the plan.

48. Plaintiff has standing to assert claims "to recover benefits due … under the plan" and to "clarify [his] rights to future benefits under the terms of the plan," as authorized by 29 U.S.C. § 1132(a)(1)(B).

49. Anthem has breached the terms of its health plans through its violation of the Ohio parity law by its blanket refusal to cover treatment at residential treatment centers, causing injury to Plaintiff and both the class and subclass.

**Count 2 – Breach of Fiduciary Duty Under 29 U.S.C. § 1132(a)(3)**

50. Plaintiff restates the preceding paragraphs as if fully set forth.

51. Plaintiff's second claim is for breach of fiduciary duty as those duties are incorporated in ERISA. The class period for this claim extends back six years from the

commencement of this action to the date of class certification. This claim is brought by both the class and subclass described above.

52. Under 29 U.S.C. § 1132(a)(3), a civil action may be brought by a participant or beneficiary "to enjoin any act or practice which violates any provision of [ERISA Title I]" or to "obtain other appropriate equitable relief … to redress such violations … [or] to enforce any provisions of" ERISA Title I.

53. Plaintiff is a participant in the plan.

54. Anthem's contract incorporates the terms of the Ohio parity law. In particular, the contract provides that "[a]ny provision of [the contract] which is in conflict with the laws of the state in which the Group Contract is issued, or with federal law, is hereby automatically amended to conform with the minimum requirements of such laws." (Exh. A, pg. M-55).

55. The Ohio parity law – as incorporated into the Anthem contract -- requires that "every policy of sickness and accident insurance shall provide benefits for the diagnosis and treatment of biologically based mental illnesses on the same terms and conditions as, and shall provide benefits no less extensive than, those provided under the policy of sickness and accident insurance for the treatment and diagnosis of all other physical diseases and disorders." O.R.C. 3923.281(B).

56. Anthem has breached the terms of its health plans through its violation of the Ohio parity law by its blanket exclusion of coverage for services for the treatment of a biologically based mental illness at residential treatment centers.

57. Anthem's blanket exclusion of this benefit has caused injury to Plaintiff and the subclass in an amount to be determined by a jury.

**WHEREFORE**, plaintiff requests the following:

a. Certification of the class and subclass described above with the appointment of plaintiff as the class representative for the class and the subclass and the undersigned attorneys as class counsel;

b. An award of benefits representing those sums that plaintiff and class members paid for services at residential treatment centers that should have been covered by Anthem;

c. Disgorgement of all profits Anthem enjoyed through the use of money that should have been used to pay plaintiff's and class's legitimate coverage claims;

d. An order requiring Anthem to cover all medically necessary services at residential treatment centers in the future;

e. Any and all other relief related to this action, including payment of reasonable fees, costs, and interest where permitted by law.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues that may be so tried.

Dated: December 20, 2017                    Respectfully submitted,

*/s/ Robert R. Sparks*
Robert R. Sparks (0073573)
STRAUSS TROY CO., LPA
150 E. Fourth Street, 4th Floor
Cincinnati, Ohio  45202-4018
Telephone No.:  513-621-2120
Facsimile No.:  513-241-8259
Email: *rrsparks@strausstroy.com*

Jordan Lewis
JORDAN LEWIS, P.A.
4473 N.E. 11th Avenue
Fort Lauderdale, Florida 33334
Telephone No.: (954) 616-8995
Facsimile No.:  (954) 206-0374
Email: *jordan@jml-lawfirm.com*
*Counsel for Plaintiff*