## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **BRIAN EMCH, on behalf of himself** | : | |
| **and all others similarly situated,** | : | Case No.: 1:17-cv-856 |
| | : | |
| Plaintiff, | : | Judge Michael R. Barrett |
| | : | |
| **vs.** | : | |
| | : | |
| **COMMUNITY INSURANCE** | : | |
| **COMPANY d/b/a COMMUNITY** | : | |
| **BLUE CROSS AND BLUE SHIELD,** | : | |
| | : | |
| Defendant. | : | |

## PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, APPROVAL OF NOTICE TO THE CLASS, AND SCHEDULING A FINAL FAIRNESS HEARING

Plaintiff, Brian Emch ("Plaintiff"), hereby moves this Court pursuant to Fed.R.Civ.P. 23(e) for preliminary approval of the parties' proposed Class Settlement, approval of Notice to the Class, and scheduling a final Fairness Hearing. A memorandum in support of this motion is attached hereto.

Dated:  March 2, 2021.                              Respectfully submitted,

 /s/Robert R. Sparks
Robert R. Sparks (Ohio 0073573)
**STRAUSS TROY CO., LPA**
150 E. Fourth Street, 4th Floor
Cincinnati, Ohio 45202
Telephone No.:  (513) 621-2120
Facsimile No.:  (513) 241-8259
Email*:  rrsparks@strausstroy.com*

Jordan Lewis (Fl. Bar No. 97997)
**JORDAN LEWIS, P.A.**
4473 N.E. 11th Avenue
Fort Lauderdale, FL  33334
Telephone:  (954) 616-8995
Facsimile:  (954) 206-0374
Email:  *Jordan@jml-lawfirm.com*

*Counsel for Plaintiff and the Class*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **BRIAN EMCH, on behalf of himself and all others similarly situated,** | : : : | Case No.: 1:17-cv-856 |
| Plaintiff, | : : | Judge Michael R. Barrett |
| **vs.** | : : | |
| **COMMUNITY INSURANCE COMPANY d/b/a COMMUNITY BLUE CROSS AND BLUE SHIELD,** | : : : : | |
| Defendant. | : : | |

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, APPROVAL OF NOTICE TO THE CLASS, AND SCHEDULING A FINAL FAIRNESS HEARING

## I.     BACKGROUND

In this lawsuit filed in December 2017, Plaintiff challenges the denial by Defendant Community Insurance Company[1] ("Community") of charges for mental health services rendered at a residential treatment center in circumstances where the plan doesn't limit coverage for comparable medical/surgical services. Plaintiff alleges that this practice violates the Ohio mental health parity law, O.R.C. §3923.281 (the "Ohio parity law").

Plaintiff alleged that a class of individuals affected by Community's practice and its interpretation of its policies should be certified. Plaintiff seeks certification under Rule 23(b)(3) of the following class:

> All persons who are covered under any policy, contract, or certificate of insurance that is delivered, issued for delivery, renewed, or used in the State of Ohio by Community that

---

[1] For purposes of settlement only, Defendant Community has confirmed it does not oppose this motion.

> provides coverage for biologically based mental illness but categorically excludes coverage for biologically based mental illness at residential treatment centers and were denied benefits because the policy, contract, or certificate of insurance excluded such coverage.

Doc. 1, ¶, 33. By this Motion, Plaintiff seeks certification of the subclass under Rule 23(b)(3).

On June 22, 2018, Community filed a motion to dismiss the Complaint in its entirety. The parties fully briefed that motion and, on October 25, 2019, the Court denied the motion to dismiss. Thereafter, the parties engaged in discovery relating to class certification and, subsequently, undertook settlement discussions. After direct negotiations between counsel for the parties, an agreement was reached for the settlement of this matter on a classwide basis subject to documentation of that settlement agreement by the parties. The parties now submit to this Court the attached Settlement Agreement for preliminary approval.

## A. Settlement Negotiations

At all times, the negotiations to settle this matter were conducted at arms-length between counsel for both parties. Prior to the settlement discussions, Community produced information regarding the size of the class of persons falling within Plaintiff's class definitions and the parties exchanged written summaries of their settlement positions and demands. During these discussions, the parties did not discuss the amount of attorney fees or incentive awards for the Class Representative until after the parties reached agreement on the material terms of payments directly to Class Members.

Thereafter, negotiations took place about the amount of the incentive award for the Plaintiff, and the amount of attorney fees which Community would not oppose to be

awarded class counsel, subject to approval by the Court. The parties concluded their agreement which is reflected in the attached Settlement Agreement.

### B.    The Settlement Agreement

The Compensatory terms of the agreement are as follows. On behalf of the class members involved in this action, Community has agreed to create a fund totaling $200,000. No part of this fund reverts to Community. The settlement fund is to be used to provide settlement to Class Members and pay attorney fees, costs, and incentive awards approved by the Court.

The Net Settlement Fund will be distributed to Class Members. That fund is expected to total $137,500. Community has identified ten (10) Class Members who had claims denied by Community for mental health treatment at residential treatment centers. The total amount submitted by members or billed by providers to Community for treatment at a residential treatment facility $651,565. But, it is important to note that the amount billed by providers is not the amount that any member of the class would be entitled to receive as reimbursement for residential treatment services even if the claims were processed by Community.

Plaintiff's case is an example and is illustrated by reference to the policy filed at Doc. 1-1. Plaintiff's residential treatment center was not in-network. The Community policy issued to Plaintiff provides in the Schedule of Benefits that non-network claims are subject to "30% Coinsurance." Doc 1-1, page 13. Further, the amount billed by the provider is also subject to copayments, deductibles, and out-of-pocket limits specified in the policy. Deductibles and out-of-pocket limits for non-network services are double the amount for in-network services. Doc. 1-1, page 12. Finally, benefits for covered services like residential treatment are also limited to the Maximum Allowable Amount for the

given service. Doc. 1-1, page 11. This can be an amount less than the amount billed by the provider.

Factoring in the Maximum Allowable Amount, co-insurance, per diem caps, and the other deductions to the amount billed by the provider, the estimated allowed amount for all the class claims would likely be as low as $320,000, or even lower. Had the claims of Class members been processed by Community, Plaintiff would have received less – perhaps significantly less – than 60% of Maximum Allowable Amount. The Settlement Payment of $200,000 compares favorably – about 63% -- with the maximum amount that Class Members could expect to receive if completely successful on the merits.

The Net Settlement Amount will be distributed directly to Class Members without the need to complete any claim forms. Each Class Member will be paid their pro rata share of the settlement amount.

Brian Emch, the Class Representative, will seek an award of $2,500. Class Counsel has agreed to apply to the Court for approval of attorneys' fees and costs, which will not exceed $60,000. Community has agreed not to oppose a fee application which is in accord with the above referenced procedure. The comprehensive settlement agreement is attached and incorporated herein as Exhibit "A".

Any funds remaining from uncashed settlement checks after 120 days following payments to Class Members shall be disbursed as a *cy pres* award to Alcoholics Anonymous.

The terms of the proposed settlement agreement were hotly contested by the parties. Each party was required to evaluate complex legal, factual, and procedural issues in evaluating their settlement position. These considerations included:

4

1)      the size of the class which could be proven;

2)      the probable damages which could be awarded by the Court;

3)      the time, expense, and difficulty required to bring the proceeding to a conclusion in the event that settlement negotiations failed;

4)      the likelihood of success on the merits;

5)      the likelihood of success, and time and expense involved in the appeals of any final or interlocutory orders or judgments of this Court.

There are advantageous features of this Settlement which are not commonly seen in other class settlements. First, the payment by Community is guaranteed. There is no reverter provision. Second, there is no "blow" provision. That is, the Settlement does not permit Community to withdraw from the Agreement if a certain number or percentage of Class Members opt-out. Third, there is no claim form to be completed and filed by Class Members. Payments are to be made directly to all Class Members that can be located and identified.

In light of a careful analysis of the preceding factors by Class Counsel, and after negotiations with Counsel for Respondents, Class Counsel are of the opinion that the negotiations have yielded a settlement which is fair, which adequately compensates class members, and which provides for compensations for class members which is both certain and timely.

## II. ARGUMENT

### A. The Settlement should be preliminarily approved.

#### 1. Standards for approval of class settlements.

Approval of a class action settlement involves a two-step process: (1) entry of a "preliminary approval" order and (2) entry of a "final approval" order after notice of the

settlement has been provided to the class and a hearing has been held to consider the fairness of the proposed settlement. *See, e.g., Manual for Complex Litigation*, Fourth, §13.14.

The purpose of the Court's preliminary evaluation of a proposed class action settlement is to determine whether the settlement is sufficiently within the "range of possible approval" to warrant notice to the class of the terms and conditions of the settlement and the scheduling of a formal fairness hearing. *See Armstrong v. Board of School Directors of City of Milwaukee*, 616 F.2d 305, 313 (7th Cir. 1980), *overruled on other grounds, Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *United States v. Jones & Laughlin Steel Corp.*, 804 F.2d 348, 351 (6th Cir. 1986); *see also In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y. 1995) ("[a]t this stage of the proceeding, the Court need only find that the proposed settlement fits 'within the range of possible approval'") (citation omitted). If the settlement receives preliminary approval, then after notice of the settlement terms are provided to the class, the Court holds a final fairness hearing where arguments and evidence may be presented in support of, or in opposition to, a finding that the settlement is "fair, reasonable, and adequate." *See Armstrong*, 616 F. 2d at 313; *Fidel v. Farley*, 534 F. 3d 508, 513 (6th Cir. 2008) ("We review a district court's approval of a settlement as fair, adequate, and reasonable for abuse of discretion").

Neither formal notice nor an evidentiary hearing is required at the preliminary approval stage. Rather, preliminary approval of a proposed settlement is based upon the Court's "familiarity with the issues and evidence of the case as well as the arms-length nature of the negotiations prior to the settlement," ensuring that the "settlement is neither illegal nor collusive." *Robinson v. Ford Motor Co.*, Nos. 04-CV-00844; 04-CV-

6

00845, 2005 U.S. Dist. LEXIS 11673 at *10 (S.D. Ohio June 15, 2005), *citing Williams v.*

*Vukovich*, 720 F.2d 909, 921 (6th Cir. 1993); *In re Dun & Bradstreet Credit Svcs. Cust.*

*Litig.*, 130 F.R.D. 366, 369 (S.D. Ohio 1990).

> As one federal district court has noted:

> In making a preliminary assessment of the fairness of the proposed settlement agreement, the Court's 'intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.'

*In re Inter-Op Hip Prosthesis Liab. Litig., 204 F.R.D. 359, 379 (N.D. Ohio 2001)*

(*quoting Officers for Justice v. Civil Serv. Commission of the City and County of San*

*Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)). The Court further noted that:

> A preliminary fairness assessment 'is not to be turned into a trial or rehearsal for trial on the merits,' for 'it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.' Rather, the Court's duty is to conduct a threshold examination of the overall fairness and adequacy of the settlement in light of the likely outcome and the cost of continued litigation.

*Id.* (citation and quotation omitted).

As part of its assessment, "the Court may not second guess the settlement terms."

*In re Inter-Op Hip Prosthesis Liab. Litig., 204 F.R.D. at 379-80. See also Armstrong,*

616 F.2d at 315 ("[j]udges should not substitute their own judgment as to optimal

settlement terms for the judgment of the litigants and their counsel"); *Officers for*

*Justice*, 688 F.2d at 625 ("[t]he proposed settlement is not to be judged against a

hypothetical or speculative measure of what might have been achieved by the

negotiators"). Instead, "[w]hen a settlement is the result of extensive negotiations by

experienced counsel, the Court should presume it is fair." *In re Inter-Op Hip Prosthesis*

*Liab. Litig.*, 204 F.R.D. at 380. Therefore, a motion for preliminary approval should be granted so long as the proposed Settlement falls "within the range of possible approval." *See, e.g., Armstrong*, 616 F.2d at 314.

Here, the parties and their counsel submit that the proposed Settlement satisfies the requisite standards applied in connection with Rule 23(e) and respectfully request that the Court preliminarily approve the proposed Settlement as "within the range of possible approval" and authorize issuance of notice to the Class in the manner set forth in the proposed Preliminary Approval Order attached to the Settlement Agreement.

> **2. As the result of contested, arm's length negotiations conducted in good faith among experienced counsel, the proposed Settlement is fair, reasonable, and adequate and warrants preliminary approval.**

"Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re Nasdaq Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y 1997) (*citing Manual for Complex Litigation*, Third, §30.41). Courts generally presume that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations among experienced counsel. *See Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) ("[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel."); *In re PaineWebber Limited P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) ("[G]reat weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.") (internal quotation marks omitted), *aff'd*, 117 F.3d 721 (2d Cir. 1997); *M. Berenson Co. v. Faneuil*

8

*Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("Where, as here, a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation, conducted by capable counsel, it is presumptively fair.").

Experienced counsel on both sides of this case believe that the proposed Settlement is a fair and reasonable resolution of the claims against Community in this contested action and recommend that the Court preliminarily approve the Settlement. This recommendation is entitled to deference. *See e.g., Williams*, 720 F.2d at 922 ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs[,]" and that deference "should correspond to the amount of discovery completed and the character of the evidence uncovered.").

Furthermore, counsel for the parties have extensive experience in complex litigation and are thoroughly familiar with the factual and legal issues of this case and the strengths and weaknesses of the positions of the parties. In short, nothing in the course of settlement negotiations or the substance of the Settlement itself raises any doubt as to its fairness. And the participation of experienced attorneys throughout the litigation strongly supports a finding that the proposed Settlement is sufficiently fair, reasonable, and adequate to justify notice to the proposed Class and the scheduling of a hearing to consider final approval of the proposed Settlement.

### B. Class certification.

A proposed settlement class must satisfy Rule 23, which requires numerosity, commonality, typicality, and adequacy of representation. *See UAW v. General Motors Corp.*, 497 F.3d 615, 625-26 (6th Cir. 2007). For the following reasons, this Court should conditionally certify this action as a class action for the purposes of effectuating the settlement.

Before undertaking an analysis into whether the requirements of Rule 23 are met, the Court must first determine if two implicit requirements for class certification have been satisfied: (i) whether a precisely defined class exists, and (ii) whether the named plaintiffs are members of the proposed class. *Bentley v. Honeywell Int'l, Inc.*, 223 F.R.D. 471, 477 (S.D. Ohio 2004); *Edwards v. McCormick,* 196 F.R.D. 487, 490-91 (S.D. Ohio 2000). Both are satisfied here.

### 1.    The implicit requirements of Rule 23 are met.

### a.    The proposed class is identifiable.

A properly defined class exists if: (i) the definition specifies a particular group at a particular time frame and location who were harmed in a particular way, and (ii) the definition is such that the Court can ascertain its membership in some objective manner. *Edwards*, 196 F.R.D. at 491. Here, the Class includes a very specific group of people easily identifiable from Community's own records. In fact, each member of the class and the amount of his or her claims have already been identified and tallied.

### b.    Plaintiff is a member of the Class.

The second implicit requirement of Rule 23 is that "the named representative must be a member of the class." *Bentley*, 223 F.R.D. at 477. To satisfy this prerequisite, the class representative must have proper standing. That is, the class representative must possess the same interest and suffer the same injury shared by all members of the class that he or she seeks to represent. Plaintiff clearly satisfies this requirement. Plaintiff has the same interest and has suffered the same injury as every other Class member. Accordingly, he is qualified to represent the members of the Class. As demonstrated, the implicit requirements of Rule 23(a) are met.

10

## 2. The explicit requirements of Rule 23(a) are satisfied.

### a. Numerosity is Satisfied

Rule 23(a)(1) provides that a class action may be maintained only if "the class is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). There is no precise number at which joinder becomes impracticable and where a class action is the only viable alternative. *Bacon v. Honda of America Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004). Indeed, the "impracticability of the joinder is not determined according to a strict numerical test but upon the circumstances surrounding the case." *Senter v. General Motors Corp.*, 532 F.2d 511, 523 n.24 (6th Cir.), *cert denied*, 429 U.S. 870 (1976). Furthermore, where a class is being certified for settlement only, the Rule 23(a) requirements may be relaxed such that "a district court need not inquire whether the case, if tried, would prevent intractable management problems . . . for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Rather, the dominant concern in the context of settlement is rather whether "a proposed class has sufficient unity so that absent members can fairly be bound by the decisions of class representatives." *Id.*

As noted above, the numerosity requirement of Rule 23 is not determined by a numerical test alone. The discovery engaged in by the parties and information produced during settlement negotiations reveals that there are 10 individuals who submitted over 175 denied claims for mental health services at residential treatment centers. Though admittedly small, this number of class members is sufficient to satisfy the numerosity requirement of Rule 23(a). *See In re American Medical Systems*, 75 F.3d 1069, 1079 (6th Cir. 1996); *see also, Afro American Patrolmens League v. Duck*, 503 F.2d 294 (6th Cir. 1974) (as few as 17 and no more than 35 class members); *In re Kirschner Med.*

*Corp. Sec. Litig.*, 139 F.R.D. 74, 78 (D. Md. 1991) (commenting that 25 to 30 class members is sufficient); *Jackson v. Danberg*, 240 F.R.D. 145, 147 (D. Del. 2007) (16 class members); *Wilson v. Anthem Health Plans of Ky., Inc.*, No. 3:14-CV-743-TBR, 2017 U.S. Dist. LEXIS 572, at *18 (W.D. Ky. Jan. 3, 2017) (27 class members); *Bublitz v. E.I. du Pont de Nemours & Co.*, 202 F.R.D. 251, 256 (S.D. Iowa 2001) (16 class members in ERISA case). Though small, without a certified class it is highly unlikely that other members would bring their own case or even know to allege that Community may have violated the Ohio parity act. Additionally, deciding this issue in this case would resolve this issue for all affected individuals and would avoid the filing of separate lawsuits throughout the state.

For these reasons, Plaintiff submits that numerosity has been established.

### b.    Commonality is Satisfied

Rule 23(a)(2) requires that there be "questions of fact or law common to the class." Fed.R.Civ.P. 23(a)(2). Commonality requires "a common issue the resolution of which will advance the litigation." *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007); s*ee also Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 542-43 (6th Cir. 2012) (finding that commonality and typicality requirements were satisfied where a single practice or course of conduct by defendant gives rise to the claims of plaintiffs and the class). "To demonstrate commonality, plaintiffs must show that class members have suffered the same injury." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 852 (6th Cir. 2013), *citing, Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541, 2551 (2011).

Plaintiff has identified several questions of fact common to Class members in his Complaint. Doc. 1, ¶38. However, there is one overarching common question:  May

Community legally exclude coverage for mental health treatment at residential treatment centers without violating the Ohio parity act?

Also, because this Class will be certified for settlement purposes only, all Class members have a common interest in having the Court evaluate the proposed Settlement, consider the comments and reaction of the Class members to the Settlement, and determine whether the Settlement is fair, adequate and reasonable such that it warrants final approval.

**c. Typicality**

Rule 23(a)(3) requires the claims of the class representatives to be typical of the claims of the class. This "typicality" requirement is satisfied when the representatives' claims are based on the same legal theory, or when the wrongdoing is alleged to have violated the same legal interest of all class members. *In re Revco Sec. Litig.*, 142 F.R.D. 659, 666 (N.D. Ohio 1992). In addition, the class representative must have claims and interests similar to those of the whole class. *See Senter*, 532 F.2d at 525. This requirement "is intended to assure that the representatives' claims are similar enough to those of the class that the representative will adequately represent the class." *Day v. NLO, Inc.*, 144 F.R.D. 330, 333 (S.D. Ohio 1992) (*citing, General Tel Co. v. Falcon* (1982), 457 U.S. 147, 157 n.13), *vacated on other grounds*, 5 F.3d 154 (6th Cir. 1993). Differing degrees of injury among Class members do not defeat typicality as long as the basic injury each Class member asserts is the same. Likewise, even if different defenses apply to some Class members, typicality may be found. *Wess v. Storey,* No. 2:08-cv-623, 2011 U.S. Dist. LEXIS 41050, at *21 (S.D. Ohio Apr. 14, 2011) (*citing, Bittinger v. Tecumseh Prods. Co.,* 123 F.3d 877, 885 (6th Cir. 1997). Typicality exists when a Class

13

member shows that his "injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff." *Bacon*, 370 F.3d at 572.

Here, the typicality requirement is satisfied. Plaintiff's claims are typical of the claims of other class members. Plaintiff experienced the very same exclusion applied to his expenses for mental health services at a residential treatment center as other Class members.

### d.    Plaintiff Will Fairly and Adequately Represent the Class

Rule 23(a)(4) requires the lead plaintiff or class representative to fairly and adequately protect the Class's interests. Rule 23(a)(4). The Sixth Circuit applies two criteria to determine whether a representative of a class will be adequate: (1) the representative must have common interests with unnamed members of the class (common interests), and (2) it must appear that the representative will vigorously prosecute the interests of the Class through qualified counsel (vigorous prosecution). *Kinder v. Nw. Bank*, 278 F.R.D. 176, 184 (W.D. Mich. 2011) (citing, *American Medical Sys.*, 75 F.3d at 1083).

Plaintiff satisfies both criteria of the adequacy test of Rule 23(a)(4). Like the rest of the Class, Plaintiff had the same exclusion applied to his claims as other Class members. Thus, Plaintiff's interests are not antagonistic to those of the Class. *See In re Corrugated Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) ("[S]o long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes.")

As for the second prong of Rule 23(a)(4) requiring adequacy of counsel, courts also have held that counsel should be experienced in handling litigation of the type

involved in the case. Plaintiff has retained experienced counsel. Plaintiff's counsel has substantial experience in the prosecution of class actions of this nature. Both Strauss Troy and Jordan Lewis, P.A., have successfully prosecuted class actions throughout the country.

Since there is no conflict among Plaintiff and Class members, and Plaintiff's counsel is qualified, experienced and able to pursue this litigation, the adequacy requirements have been satisfied.

### 3. The requirements of Rule 23(b)(3) are satisfied.

This action may be certified as a damages class pursuant to Rule 23(b)(3). Rule 23(b)(3) authorizes certification where common questions of law or fact predominate over individual questions and the class action is superior to other available means of adjudication. *American Medical Sys.,* 75 F.3d at 1084; *Jordan v. Glob. Nat. Res., Inc.,* 102 F.R.D. 45, 51 (S.D. Ohio 1984). Both requirements are satisfied here.

### a. Common questions of law or fact predominate.

The common issues identified above and in Plaintiff's Complaint predominate over individual issues. The question of law of whether Community may legally exclude coverage for mental health services at residential treatment centers is common to all class members and is not subsumed by individual questions. The common factual and legal issues predominate over any individual issues which may arise. In fact, the common factual and legal issues can be established through objective data and documents contained within Community's business records. Mini-trials on the claims of individual class members are unnecessary.

> **b.     A class action is superior to other available methods for adjudication of Community's conduct.**

Rule 23(b)(3) also requires as a prerequisite  for maintaining a class action that the class action vehicle must be superior to other methods of adjudication, such as joinder. The Court must consider four factors to ensure that superiority is met: (i) the interests of members of the Class in individually controlling the prosecution of separate actions; (ii) whether other litigation has already commenced; (iii) the desirability or undesirability of concentrating claims in one forum; and, (iv) the difficulties likely to be encountered in managing a class action. Rule 23(b)(3).

Courts find the superiority requirement met where: (i) many of the Class members likely have suffered only small losses, making it improbable that they can afford to proceed with their claims as individuals; (ii) use of the Class action vehicle will achieve judicial economy and prevent inconsistent judgments; (iii) there are no other actions against Defendants involving the same claims; and (iv) the Court foresees no particular difficulties in adjudicating the Class action. *See Kinder,* 278 F.R.D. at 185. ("Class action is a superior means of adjudicating claims when certifying a class 'would achieve economies of time, effort and expense and promote … uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'") (*citing, Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615, 117 S. Ct. 2231, 2245, 138 L. Ed. 2d 689 (1997) (*quoting,* Advisory Committee Notes); *Carroll v. United Compucred Collections, Inc.,* 399 F.3d 620, 625-626 (6th Cir. 2005).

Plaintiff is not aware of any other pending actions against Community for denying coverage for services at residential treatment centers. Even if other actions

exist, the class certification device provides this Court with judicial efficiency by permitting common claims and issues to be tried once, with binding effect on all parties. The underlying factual and legal issues are too similar for the claims to be heard independently in myriad similar individual litigations, which may also result in inconsistent results. Plaintiff foresees no management difficulties in maintaining this case as a class action.

### C.     The Court should approve the proposed Notice.

The Settlement Agreement calls for written Notice to members of the Class. If this Court grants preliminary approval, the proposed Notice (attached to the Settlement Agreement as Exhibit A) will be mailed to all Class Members at the addresses maintained by Community as updated by investigation of Class Counsel.

The proposed Notice advises Class Members of the essential terms of the Settlement Agreement, their rights, including the ability to object to the settlement and, if they have not previously been afforded the right, to opt-out of the settlement. The Notice also notifies the Class of the date, time, and location of the final fairness hearing, thereby satisfying the requirements of Rule 23.1. *See, e.g., Bailey v. White*, 320 F. App'x 364, 367 (6th Cir. 2009) ("notice must 'be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections'") (*quoting UAW v. General Motors Corp.*, 497 F.3d 615, 629 (6th Cir. 2007)). The proposed Class Notice in this case satisfies all requirements of Rule 23, surpasses due process requirements, and provides Class Members with reasonable and practical notice.

## III. CONCLUSION

For the foregoing reasons, Plaintiff submits that the proposed Settlement should be approved, that the proposed Notice and method of distributing that notice be approved, and that the Court should schedule a final fairness hearing.

Dated: March 2, 2021.

Respectfully submitted,

 /s/Robert R. Sparks
Robert R. Sparks (Ohio 0073573)
STRAUSS TROY CO., LPA
150 E. Fourth Street, 4th Floor
Cincinnati, Ohio 45202
Telephone No.: (513) 621-2120
Facsimile No.: (513) 241-8259
Email: *rrsparks@strausstroy.co*m

Jordan Lewis (Fl. Bar No. 97997)
JORDAN LEWIS, P.A.
4473 N.E. 11th Avenue
Fort Lauderdale, FL 33334
Telephone: (954) 616-8995
Facsimile: (954) 206-0374
Email: *Jordan@jml-lawfirm.com*

*Counsel for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2021, a copy of the foregoing was filed electronically with the Court's CM/ECF system. Notice of this filing will be sent by operation of the Court's CM/ECF system to all parties indicated on the electronic filing receipt. This filing may be accessed through the Court's CM/ECF system.

 /s/Robert R. Sparks
Robert R. Sparks (Ohio 0073573)

18