UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **BRIAN EMCH, on behalf of himself and all others similarly situated,** : | |
| : | Case No.: 1:17-cv-856 |
| Plaintiff, : | |
| : | Judge Michael R. Barrett |
| vs. : | |
| : | |
| **COMMUNITY INSURANCE COMPANY d/b/a COMMUNITY BLUE CROSS AND BLUE SHIELD,** : | |
| : | |
| Defendant. : | |

**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**

The Court, being fully apprised on the premises and having considered from all parties, now makes the following **ORDER**:

## I.    LEGAL STANDARD

The motion for the Court is to finally approve a class action settlement. "Once preliminary approval has been granted, a class action settlement is presumptively reasonable, and an objecting class member must overcome a heavy burden to prove that the settlement is unreasonable."[1]  "[T]he  lawgenerally favors and encourages the settlement of class actions."[2]

---

[1] *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 550 (S.D. Ohio 2000) (citing *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983)).
[2] *In re Nationwide Fin. Servs. Litig.*, 2009 U.S. Dist. LEXIS 169962, at *3 (S.D. Ohio Aug. 18, 2009) (citing *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981); *see also Bailey v. AK Steel Corp.*, 2008 U.S. Dist. LEXIS 16704 (S.D. Ohio Feb. 21, 2008) (In making this

To approve a proposed settlement, it must be "fair, adequate and reasonable."[3] In considering whether a settlement is fair, adequate and reasonable, the trial court considers the following factors: (1) reaction of absent class members; (2) amount of discovery engaged by the parties; (3) likelihood of success on the merits; (4) the risk of fraud or collusion; (5) the complexity, expense and likely duration of the litigation; (6) the opinions of class counsel and class representative; (7) the reaction of absent class members; and (8) the public interest.[4]

## II. BACKGROUND

**A. Case history**

This case dates back to December 20, 2017 when Brian Emch filed a two-count ERISA lawsuit that alleged that defendant Community Insurance Company violated the Ohio mental health parity law, O.R.C. §3923.281, where its certificates of coverage excluded from coverage all services rendered at residential treatment centers for biologically based mental illness though there was no similar exclusion for comparable medical/surgical services.

On June 22, 2018, Community filed a motion to dismiss the Complaint in its entirety. The parties fully briefed that motion and, on October 25, 2019, the Court denied the motion to dismiss.[5] Thereafter, the parties engaged in discovery relating to

---

determination, the Court evaluates the proposed class action settlement in light of the general federal policy favoring the settlement of class actions).
[3] *Huguley v. Gen. Motors Corp.*, 1991 U.S. App. LEXIS 2993, at *9 (6th Cir. Feb. 22, 1991).
[4] *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 244 (6th Cir. 2011) (quoting *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)).
[5] *Emch v. Cmty. Ins. Co.*, 2019 U.S. Dist. LEXIS 184682 (S.D. Ohio Oct. 25, 2019).

class certification and, subsequently, undertook settlement discussions. After direct negotiations between counsel for the parties, an agreement was reached for the settlement of this matter on a classwide basis subject to documentation of that settlement agreement by the parties.

**B.     The settlement agreement**

On behalf of the class members involved in this action, Community has agreed to create a fund totaling $200,000. No part of this fund reverts to Community. The settlement fund is to be used to provide settlement to class members and pay attorney fees, costs, and incentive awards approved by the Court.

The net settlement fund will be distributed to class members. That fund is expected to total $137,500. Community has identified 10 class members who had claims denied by Community for mental health treatment at residential treatment centers for biologically based mental illness. The total amount submitted by these members or billed by their providers to Community for treatment at a residential treatment facility is $651,565. But that dollar figure represents more than "100 cents on the dollar" recovery, as it doesn't account for deductibles, coinsurance, copayments and balanced billing, all of which shift, by contract, RTC expenses from Community to class members.

Emch's case is illustrative. Emch's RTC was not in-network. Under his plan, non-network claims are subject to "30% Coinsurance." In addition, the amount billed by the RTC is also subject to copayments, deductibles, and out-of-pocket limits specified in the policy. Deductibles and out-of-pocket limits for non-network services are double the amount for in-network services. Finally, benefits for covered services like residential

3

treatment are also limited to the Maximum Allowable Amount for the given service. This can be an amount less than the amount billed by the provider.

Accounting for these factors reduces the "100 cents on the dollar" class recovery to, probably, no more than $320,000.

The net settlement amount will be distributed directly to class members without the need to complete any claim forms. Each class member will be paid their *pro rata* share of the settlement amount.

Class representative Emch seeks an award of $2,500. Class counsel has agreed to apply to the Court for approval of attorneys' fees and costs not to exceed $60,000.

Any funds remaining from uncashed settlement checks after 120 days following payments to class members shall be disbursed as a *cy pres* award to Alcoholics Anonymous.

**C.**     **Preliminary approval and class notice**

On May 19, 2021, the Court preliminarily approved the settlement. Since then, plaintiff's counsel has mailed class notices to all 10 class members. Not one class member objected to the proposed settlement.

### III.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

Under the law, the proposed settlement is fair, reasonable and adequate.

**A.**     **The reaction of absent class members.**

No class members have objected to or opted out of the proposed settlement. The lack of any meaningful objection to the settlement provides powerful evidence of the

4

fairness of the proposed settlement.[6] The lack of any objection by a class member is compelling evidence of the fairness, reasonableness and adequacy of the Settlement.

### B. Plaintiff conducted an extensive investigation

"To insure that Plaintiff has had access to sufficient information to evaluate her cases and to assess the adequacy of the proposed Settlement [Agreement], the stage of the proceedings and the discovery must be considered."[7]

The parties have litigated this case since its inception. Initially, the parties briefed and argued a complex Motion to Dismiss. Following the Court's decision on that motion, the parties engaged in formal and informal discovery. Further, class counsel has extensive experience in complex litigation and are familiar with the factual and legal issues in this case and the strengths and weaknesses of the positions of the parties. In short, nothing in the settlement negotiations or the substance of the settlement itself raises any doubt as to its fairness. Rather, the arm's-length nature of the negotiations and the participation of experienced attorneys throughout the litigation supports approval of the proposed settlement.

---

[6] *Brotherton v. Cleveland*, 141 F. Supp.2d 894, 906 (S.D. Ohio 2001) ("[A] relatively small number of class members who object is an indication of a settlement's fairness.") (citing 2 Herbert Newberg & Alba Comte, *Newberg on Class Actions*, § 11.48 (3d ed. 1992)); *In re Art Materials Antitrust Litig.*, 100 F.R.D. 367, 372 (E.D. Ohio 1983) (noting that the overwhelming approval of a proposed settlement by class members "is entitled to nearly dispositive weight in this court's evaluation of the proposed settlement.").
[7] *In re Nationwide Fin. Servs. Litig.*, 2009 U.S. Dist. LEXIS 169962, at *13 (S.D. Ohio Aug. 18, 2009).

C.    **Likelihood of success on the merits**

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured."[8]

Emch's Complaint was vigorously defended by Community. Both parties faced the prospect of extended litigation, with only a minimal possibility of additional relief. Under the terms of the proposed settlement, the class is receiving approximately 60-cents-on-the-dollar recovery. Accounting for the time-value of money, even a complete win would only come after years of additional litigation, necessarily reducing the value of that recovery. And that assumes that Emch ultimately prevails, which is no certainty.

D.    **There is no risk of fraud or collusion**

Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary.[9] The settlement is the product of arm's-length, good faith settlement negotiations. The parties engaged in months of arm's-length settlement discussions. There is no suggestion – much less evidence -- of fraud or collusion in this case and this factor supports final approval.

---

[8] *Poplar Creek Dev. Co.*, 636 F.3d at 245 (quoting *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984)).
[9] *In re Telectronics Pacing Sys.*, 137 F. Supp.2d 985, 1016 (S.D. Ohio 2001) (*citing* Herbert Newberg & Alba Conte, *Newberg on Class Actions* §11.51 (3d ed. 1992)) ("Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered.").

E. **Continued litigation would be complex, lengthy, and expensive.**

"Generally speaking, '[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them.'"[10] This action is no exception, and this factor also weighs heavily in favor of finding the settlement fair and reasonable.

Absent settlement, class members would have little hope of obtaining relief while this action remained pending for several more years and involved proceedings in this Court and, likely, through appeals. In addition, absent settlement the parties would have undoubtedly engaged in additional discovery and motion practice. If the litigation continued, the parties would have pursued additional fact discovery, depositions, and possibly, expert discovery. Thus, continued litigation would undoubtedly require additional months – or years -- of discovery and continued motion practice even in advance of any trial or hearing, which itself would be complex, expensive, and require further delays. The settlement obviates that delay and these expenses. It also advances the resolution of this action at an appropriate stage and provides meaningful relief to class members.

---

[10] *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001) *decision clarified*, 148 F. Supp.2d 936 (S.D. Ohio 2001) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp.2d 164, 174 (S.D.N.Y. 2000)).

**F.     The opinions of class counsel and the class representative**

Experienced counsel recommends that the Court approve the settlement agreement and this recommendation is entitled to deference.[11]

Combined, Class Counsel has extensive experience in health care litigation specifically and class action litigation generally. Emch approved the settlement agreement. Based upon their respective experience in handling cases such as this one, class counsel are well-suited to determine the need and the value of settling litigation such as this action.

**G.     The public interest**

The public interest also favors approval of the settlement. First, "[t]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources."[12]  Second, the settlement ends potentially long and protracted litigation and frees judicial resources.[13]

The evidence to support each of the fairness factors is compelling.  Accordingly, the Court approves as final this settlement.

---

[11] *See e.g., Williams v. Vukovich*, 720 F.2d 909, 922 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs[,]" and that deference "should correspond to the amount of discovery completed and the character of the evidence uncovered.").
[12] *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)).  *Accord In re Nationwide Fin. Servs. Litig.*, 2009 U.S. Dist. LEXIS 126962, at *22 (S.D. Ohio Aug. 18, 2009) ("[T]here is certainly a public interest in settlement of disputed claims that require substantial federal judicial resources to supervise and resolve.").
[13] *See In re Telectronics*, 137 F. Supp. 2d at 1025.

8

## IV. CONCLUSION

**IT IS SO ORDERED**.

/s Michael R. Barrett
_____
Michael R. Barrett, Judge
United States District Court